## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

-------------------------------------------------------------

CHRISTINE BALDINI                  :
323 Westridge Circle,           :
Phoenixville, PA 19460        :
                                 :

             Plaintiff,       :

                                 :     Civil Action No.: _____

       v.                    :

                                 :     **JURY TRIAL DEMANDED**

CALIBER SERVICE MANAGEMENT, LLC  :
397 Eagleview Boulevard      :
Exton, PA 19341             :
                                 :

            Defendant.     :

-------------------------------------------------------------

## COMPLAINT – CIVIL ACTION

Plaintiff, Christine Baldini ("Plaintiff"), by and through her undersigned attorneys, for her Complaint against Caliber Service Management, LLC, ("Defendant"), alleges as follows:

1. Plaintiff brings this action to redress violations by the Defendant of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, *et seq*., the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §951, *et seq*., and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq*. As a result, Plaintiff has suffered damages set forth herein.

### PARTIES

2. Plaintiff Christine Baldini (hereinafter, "Plaintiff") is a citizen of the United States and Pennsylvania, and currently maintains a residence at 323 Westridge Circle, Phoenixville, PA 19460..

3. Upon information and belief, Defendant Caliber Service Management, LLC is a for-profit corporation registered to do business in the Commonwealth of Pennsylvania and maintains a place of business located at 397 Eagleview Boulevard, Exton, PA 19341.

**JURISDICTION AND VENUE**

4.     On or about August 14, 2024, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dually filed with the Pennsylvania Human Relations Commission ("PHRC"), thereby satisfying the requirements of 42 U.S.C. § 2000e5(b) and (e), and 43 P.S. §959 (a). Plaintiff's EEOC Charge was docketed as EEOC Charge No. 530-2024-08574. Plaintiff's EEOC Charge was filed within one hundred and eighty (180) days of the unlawful employment practice.

5.     By Correspondence dated April 13, 2026, Plaintiff received a Notice of Right to Sue from the EEOC regarding her Charge, advising Plaintiff that she had ninety (90) days to file suit against Defendant.

6.     Plaintiff filed the instant action within the statutory time frame applicable to her claims.

7.     Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintain this action.

8.     This is an action authorized and instituted pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* and the Family and Medical leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*

9.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

10.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims arise out of the same common nucleus of operative fact as her federal claims.

**FACTUAL BACKGROUND**

11.    Paragraphs 1 through 10 are hereby incorporated by reference as though the same were fully set forth at length herein.

12.    Plaintiff began her employment with Defendant on or about September 6, 2022.

13.    Plaintiff was hired in the position of Human Resources.

14.    However, Defendant placed Plaintiff in an Administrative position.

15.    After approximately one (1) year of working for Defendant, Plaintiff applied and was given a promotion to work as an Account Coordinator with the best team within Defendant.

16.    At all times material hereto, Plaintiff performed her job well, received occasional praise, and was subjected to no justifiable discipline.

17.    By way of background, Plaintiff suffers from epilepsy which may result in seizures.

18.    Plaintiff's epilepsy constitutes a disability within the meaning of the ADA and PHRA in that it substantially impairs one or more of Plaintiff's major life activities.

19.    At all times material hereto, Defendant was aware of Plaintiff's disability.

20.    Plaintiff suffered from a few small seizure episodes during work.

21.    During the episodes, Plaintiff informed Defendant that she solely needed a few minutes to herself, after which she would be okay and be able to continue to work.

22.    However, each and every time, Defendant ignored Plaintiff's request for a few minutes to herself and would instead send Plaintiff home for the remainder of the day.

23.    It became clear the Defendant viewed Plaintiff as a liability.

24.    On or around December 20, 2023, Plaintiff experienced severe stomach pain to the point where she was unable to stand up.

25.    Plaintiff sought treatment and was hospitalized for approximately one (1) week.

26.     Subsequently, Plaintiff was hospitalized again and was diagnosed with Gastroenteritis and Esophagitis.

27.     Plaintiff was required to stay in the hospital for observation for her Gastroenteritis and Esophagitis for approximately ten (10) days.

28.     During the entire hospitalization time described above, Plaintiff was in close contact with Defendant's Head of Human Resources, who assured Plaintiff not to worry about anything and stated that Defendant just wanted Plaintiff to get better.

29.     Plaintiff was released from the hospital in or around January 2024.

30.     After being released, Plaintiff was still weak and dizzy.

31.     On or around January 11, 2024, while at her mother's house after being released from the hospital, Plaintiff fell down a flight of stairs.

32.     Fearing that she would hit her head, Plaintiff put her arm out to catch herself and sustained a fractured wrist.

33.     As a result, Plaintiff returned to the hospital and required surgery on her wrist.

34.     A plate and screws were put into Plaintiff's wrist.

35.     During the entire aforementioned time, Plaintiff was again in close contact with Defendant's Head of Human Resources.

36.     This time, Plaintiff was told to fill out FMLA paperwork so that her position would be "held" for her.

37.     Accordingly, on or around January 15, 2024, Plaintiff filled out and requested leave under the FMLA as a result of the aforementioned serious health condition.

38.     Plaintiff's paperwork requested advised and requested time to recovery from surgery and time to attend occupational therapy, until approximately March 25, 2024.

39.     In addition, the paperwork provided an estimate that Plaintiff would need to seek occupational therapy until approximately April 22, 2024.

40.     Luckily, Plaintiff was able to return to work earlier than her doctor anticipated.

41.     More specifically, Plaintiff was cleared by her doctor to return to work in a light duty capacity on or around March 11, 2024.

42.     Plaintiff's light duty restrictions consisted of not being allowed to lift, push, pull, or drive with her right arm.

43.     Plaintiff was able to perform the essential functions of her job, with or without reasonable accommodation.

44.     As such, on or about March 12, 2024, Plaintiff returned to work.

45.     Upon her return to work, Plaintiff was immediately retaliated against.

46.     Defendant's employees, including those on Plaintiff's team, began to act very unusual and exhibit peculiar behavior with Plaintiff.

47.     Defendant began to force Plaintiff to complete random assignments, rather than perform work that was within her job responsibilities.

48.     Defendant began to give Plaintiff random tests to complete.

49.     At no point in time since her employment began was Plaintiff subjected to this type of treatment.

50.     Thus, Plaintiff was treated differently upon her return to work.

51.     In or around the same time period, Defendant brought in two non-disabled employees onto Plaintiff's team.

52.     In notably close temporal proximity to the aforementioned, Defendant suddenly and unexpectedly terminated Plaintiff's employment on or about March 21, 2024.

53.    Defendant specifically stated to Plaintiff that she was being "let go" because her "position no longer existed," but Defendant was "always happy" with my work.

54.    However, the two non-disabled individuals whom Defendant brought in to Plaintiff's team took over her job tasks and responsibilities.

55.    When Plaintiff returned home, she looked on Defendant's LinkedIn website.

56.    On the LinkedIn website, Defendant had an open position listed for an Account Coordinator for a different ream.

57.    Defendant never mentioned nor offered Plaintiff this open position.

58.    Plaintiff sent a text message to Defendant's Human Resources stating that she saw the position posting and would like to work in that position and/or apply.

59.    The next day, the position was removed.

60.    It is believed and therefore averred that Defendant discriminated against Plaintiff and terminated her employment because of her actual and/or perceived disabilities, her past record of impairment, and/or in retaliation for her requests for a reasonable accommodation in connection thereto, in violation of the ADA and PHRA.

61.    It is further believed and therefore averred that Defendant willfully violated the provisions of the FMLA by retaliating against Plaintiff for her request and utilization of FMLA leave, in violation of the FMLA.

62.    As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damage, including, but not limited to, loss of employment, promotions, benefits, earnings and earnings potential, loss of potential benefits, and other

economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation and damage to reputation.

### COUNT I
### AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. § 12101, *et seq.*
### DISCRIMINATION & RETALIATION

63.     Paragraphs 1 through 62 are hereby incorporated by reference as though the same were fully set forth at length herein.

64.     At all times relevant hereto, Plaintiff was an employee of Defendant within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*.

65.     Pursuant to the ADA, Plaintiff is a qualified individual with one or more disabilities.

66.     Despite her disabilities, Plaintiff would have been able to perform the essential functions of her job with or without a reasonable accommodation.

67.     By reasons of the foregoing, Defendant, through its agents, officers, servants, and/or employees, has violated the ADA by failing to engage in the interactive process of determining a reasonable accommodation for Plaintiff, and by terminating Plaintiff on the basis of her actual/perceived disability, past record of impairment, and in retaliation for Plaintiff's requests for reasonable accommodations in connection thereto.

68.     As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, bonuses, and compensatory damages in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B. Punitive damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

C. Plaintiff's costs disbursements, and attorneys' fees incurred in prosecuting this action;

D. Pre-judgment interest in an appropriate amount; and

E. Such other and further relief as is just and equitable under the circumstances.

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

**COUNT II**
**PENNSYLVANIA HUMAN RELATIONS ACT**
**43 P.S. § 951, *et seq.***
**<u>DISCRIMINATION & RETALIATION</u>**

69. Paragraphs 1 through 68 are hereby incorporated by reference as though the same were fully set forth at length herein.

70. Plaintiff is a qualified individual with a disability within the meaning of the Pennsylvania Huan Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*, which substantially limits Plaintiff's ability to perform major life activities.

71. Plaintiff was/is able to perform the essential functions of her job with or without a reasonable accommodation.

72. It is believed and therefore averred that Defendant terminated Plaintiff on the basis of her actual and/or perceived disabilities, for his past record of impairment, and in retaliation for Plaintiff's requests for a reasonable accommodation in connections thereto.

73.     As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress and humiliation.

74.     The conduct described above constitutes a violation of the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*, and affords Plaintiff the opportunity to seek any and all remedies available under said Act.

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A.     Back wages, front pay, bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B.     Compensatory damages in an amount to be determined at trial;

C.     Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this action;

D.     Pre-judgment interest in an appropriate amount; and

E.     Such other and further relief as is just and equitable under the circumstances.

F.     Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of caps on certain damages as set forth by applicable law.

**COUNT III**
**THE FAMILY AND MEDICAL LEAVE ACT**
**29 U.S.C. § 2601, *et seq.***
**<u>RETALIATION</u>**

75.     Paragraphs 1 through 74 are hereby incorporated by reference as though the same were fully set forth at length herein.

76.     Defendant employed at least fifty (50) employees at its various office locations within the applicable seventy-five (75) mile radius of Plaintiff's worksite for each working day in each of twenty (20) or more calendar days in the current or preceding year.

77.     Plaintiff was an eligible employee under the FMLA and entitled to medical leave for her serious health conditions.

78.     Defendant willfully violated the FMLA by terminating Plaintiff's employment in retaliation for her request and use of FMLA leave.

79.     The aforementioned actions of Defendant constitute retaliation under the FMLA.

80.     As a result of Defendant's actions, Plaintiff has suffered significant damages.

81.     Plaintiff has, because of Defendant's wrongful termination of Plaintiff's employment, suffered loss of employment, promotion benefits, earnings and earnings potential, other significant benefits, emotional pain and suffering, emotional distress and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

A.     Back wages, front pay, and bonuses in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B.     Liquidated damages;

C.     Plaintiff's costs, disbursements and attorneys' fees incurred in prosecuting this action;

D.     Pre-judgment interest in an appropriate amount; and

E.     Such other and further relief as is just and equitable under the circumstances.

F.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

**MURPHY LAW GROUP, LLC**

By: */s/ Andrew J. Schreiber*
Andrew J. Schreiber, Esq.
Michael Murphy, Esq.
Eight Penn Center, Suite 2000
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103
TEL: 267-273-1054
FAX: 215-525-0210
aschreiber@phillyemploymentlawyer.com
murphy@phillyemploymentlawyer.com
*Attorneys for Plaintiff*

June 26, 2026

## DEMAND TO PRESERVE EVIDENCE

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to Plaintiff's potential claims and her claims to damages, to any defenses to same, including, but not limited to, electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation